**GAINES et ux. v. GAINES.**

No. 13767.

Court of Civil Appeals of Texas.
Fort Worth.

May 20, 1938.

Rehearing Denied Sept. 9, 1938.

W. E. Fitzgerald, of Wichita Falls, for appellants.

Kilgore & Rogers and Ray Bland, all of Wichita Falls, for appellee.

SPEER, Justice.

On January 20th, 1937, Sidney A. Gaines sued "Milton J. Gaines and Mrs. Marion Gaines" in a district court of Wichita County, Texas, for balance remaining unpaid on a promissory note dated June 1st, 1931, payable $200 on July 5th, 1931, $250 on July 5th, 1932, $300 on July 5th, 1933, and $300 on the 5th day of each month thereafter until the principal and interest were paid; the obligation provided for interest at six per cent per annum after maturity, and contained an accelerating maturity clause, to be exercised at the option of the payee upon failure to pay any installment when due; the note was signed, "Mrs. Marion Gaines" and "Milton J. Gaines."

Allegation of ownership by plaintiff was made; certain credits thereon were especially admitted; but it was alleged that because of failure to make certain installment payments, plaintiff had declared the remainder due and prayed for judgment for the amount unpaid, with interest and attorney's fees.

Defendants went to trial upon an amended answer and cross action, filed June 29th, 1937. The amended answer consisted of a general demurrer and general denial.

By way of cross action against plaintiff, defendants alleged the note sued on was executed by them to plaintiff for the purchase of a certain business, at which time plaintiff entered into a written contract with defendants that he would not thereafter engage in any business in the City of Wichita Falls similar to that conducted by the Gaines Motor Company (the one purchased by defendants from plaintiff), or in such a business as could reasonably be construed to be of a nature as in competition to said Gaines Motor Company. That in violation of the contract plaintiff had engaged in such a business, to defendants' damage in the sum of $4,000.

Another item claimed by defendants in their cross action was $5,000, alleged to have been loaned by Marion Gaines to plaintiff in 1922, alleging that no note was taken therefor, and that no date was set for its repayment, except that it would be repaid when the Gaines Motor Company, a corporation then being organized, would justify the withdrawal by plaintiff therefrom that amount, chargeable to his interest therein.

The third item claimed by defendants in their cross action was one-half of two notes, one for $4,360, and one for $3,320, with accrued interest and attorney fees alleged to be owing by plaintiff to defendants, growing out of a transaction which in substance is alleged to be as follows: That on dates named plaintiff and Ed Peterson executed and delivered to one McGregor their joint and several notes for the respective amounts named, which notes were due and payable in installments; that plaintiff paid only $100 thereon and that said Peterson made a large number of installment payments and that some time in the month of August, 1934, the said Peterson paid to McGregor the amount remaining unpaid thereon, and that the said Peterson thereby became the owner and holder of the two notes; that for a valuable consideration paid by defendants to Peterson said notes were assigned to defendants and they became the owners thereof and were subrogated to all the rights and remedies theretofore held by the said Peterson.

They prayed in their cross action that plaintiff take nothing by reason of his suit against them, and for judgment against plaintiff on their cross action for the several items shown in their pleadings; and in the alternative, that if judgment for plaintiff in any sum should be entered by the court, then that same be offset to that extent with an equal amount due them on their cross action, and for judgment against plaintiff for the excess, and for costs and general relief.

Plaintiff answered defendants' amended pleadings and cross action, with a demurrer and plea in abatement relating to the second and third items of defendants' cross action, based upon the grounds that defendants' pleadings show affirmatively upon their face that said alleged loan of $5,000 and the amount claimed by virtue of the purchase from Peterson of the two notes, were barred by the two years' statute of limitation. [Vernon's Ann.Civ.St. art. 5526.] Relating to the

latter item, the plea alleged that any claim defendants ever had against plaintiff was one for debt upon an implied promise by plaintiff that he would reimburse Peterson when he paid off and discharged the two notes in August, 1934; that said Peterson was shown by the pleadings to be a joint maker of the notes with plaintiff and that payment by Peterson discharged the obligations and he did not acquire, by said discharge, a right of action against plaintiff on the notes as such, and the suit being instituted more than two years after the notes were paid and discharged, the action was barred by limitation.

A special denial was plead by plaintiff as to liability for breaching the contract made when he sold his interest in the Gaines Motor Company to defendants.

The trial court sustained the demurrers and plea in abatement of plaintiff to the two items mentioned; the defendants excepted to the ruling of the court and have preserved their rights by bill of exception shown in the record, with reference to the claim on the two notes; but no complaint is made at the ruling of the court as to the alleged loan of the $5,000.

A jury trial was had; the court instructed the jury to return a verdict in favor of plaintiff against the defendants, for the amount shown to be due plaintiff on the note sued upon. The court likewise instructed the jury to find in favor of plaintiff and against the defendant, Marion Gaines, upon her cross action for the $5,000 alleged to have been loaned to plaintiff. Special issues were submitted to the jury covering defendants' claim in cross action for damages growing out of the alleged breach of the contract between the parties. The verdict of the jury was against the contention of defendants, and judgment was entered for plaintiff for $5,812.31, against the defendants, jointly and severally, for costs of suit and against defendants on their cross action.

The judgment entered, recites, among other things: " * * * and thereupon the pleadings and the evidence were presented and defendants having confessed liability on plaintiff's cause of action upon the notes sued upon, having obtained the right to open and close the argument," and continues in the usual and customary form for such decrees.

A motion for new trial was duly filed by defendants, and was by the court overruled, to which exception was taken and this appeal perfected.

The parties will carry the same designation as plaintiff and defendants, respectively, as they were in the trial court. The appeal is based upon the theory that defendants should have recovered on their cross action. The points relied upon for reversal are: (1) The trial court erred in holding defendants could not sue plaintiff for reimbursement or in contribution on the $3,320 joint note made by plaintiff and Peterson, when the latter had paid the note and later assigned it to defendants. (2) Because the trial court erred in rendering a personal judgment against defendant, Mrs. Marion Gaines, a married woman, in the absence of proof that the note sued on was an obligation for which she could personally bind herself; and (3) Because the court submitted special issue No. 16, which pertained to defendants' claim in cross action for damages growing out of a breach of the sales contract.

We have carefully studied defendants' contention in each of the points raised and cannot see it as they do. We shall discuss the assignments in the order named.

■ In the cross action it was plead that the notes subsequently paid by Peterson were joint and several obligations between him and plaintiff; it must follow that the rule applicable to the rights of a surety who pays his principal's obligation is not involved; but plaintiff and Peterson were co-makers and joint principals in the notes to McGregor. In August, 1934, Peterson paid the last of the entire indebtedness; he thus acquired the notes and later assigned them to defendants. It is claimed that defendants acquired all the rights, remedies and equities Peterson had as against the plaintiff. While this is true, yet the test in this case is, what rights did Peterson acquire when he paid the notes? We think, since he was a principal with plaintiff in the obligations, the notes, as such, were discharged when he paid them. He could not thereafter negotiate them or otherwise put them into circulation with any validity in excess of what they had in his hands. Peterson, being a co-maker with plaintiff, acquired only the rights of contribution from plaintiff, which arises by implication of law. Peterson was obligated to pay the full amount, but plaintiff was likewise obligated, and when Peterson paid the whole debt to protect his own name, that act also relieved plaintiff from pay-

ing McGregor any sum of money, and it is a recognized principle of law in this State that plaintiff impliedly promised Peterson to reimburse him for plaintiff's pro rata part of the debt. This obligation upon plaintiff's part did not arise because he still owed the notes, for indeed they were paid and fully discharged, and limitation ran in two years from the time the implied promise arose. The cross action was filed more than two years after the notes were paid.

From the very early history of our jurisprudence up to recently, our courts, including the Supreme Court, have not drawn the distinction between the liability of a principal to his surety or indorser who pays his debt, and the liability of a co-maker to one likewise liable, who pays the whole debt. In the first instance the surety who pays is entitled to recover back from his principal the whole amount paid. This may be recovered on the note itself, because payment, as that term is used, by a surety, does not discharge the obligation; it is equivalent to a purchase by the surety of the note. When one of two or more joint makers pays, he may only recover against his joint principal the latter's pro rata part of the obligation, upon the implied promise we have already mentioned. He cannot recover on the note for it is discharged. Faires v. Cockerell, 88 Tex. 428, 31 S.W. 190, 639, 28 L.R.A. 528; Batsell v. Richards, 80 Tex. 505, 16 S.W. 313.

The case of Faires v. Cockerell, supra, supports the principles announced by us, and while that case involved an action by one co-principal against others similarly bound, the reasoning of the court was based upon many former decisions which were grounded upon rights between principals and sureties. This, however, was said by the court (page 194): "The right of action in this case being upon the implied promise arising out of the relation of the parties, and not upon the written contract, * * * the cause of action thereon was barred in two years from the date when the right of action upon each payment accrued."

Defendants cite us to the case of Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663, as authority for their contention. That case involved the rights of a surety who had paid his principal's debt; the court draws the distinction between a principal's liability to a surety who pays, and that between co-principals when one of them pays the joint debt. While the court in that case criticises, in some respects, the reasoning of the court in the Faires v. Cockerell Case, supra, opinion rendered by the same court, it is, as we have shown, because, there, the same rule is applied to the rights of sureties and indorsers as those between joint makers. As we understand the Fox v. Kroeger Case, it is against the contention of defendants in the case before us. The court reasons from the premise that the rights of the parties are determined upon the question of whether or not the obligation has been paid and discharged. Article 5939, R.C.S., which is our Negotiable Instrument Act, and especially sections 119 and 121 of that article, are analyzed. The court, in construing the two sections mentioned together, said (page 681): "When so construed, the manifest meaning is that the payment by the principal debtor or the party accommodated discharges the instrument, but payment by a person secondarily liable, other than the principal debtor or party accommodated, does not discharge or extinguish the debt. * * *"

The court further announces the rule in this language: "It follows from what we have said that under the very terms of our statute it requires payment by the principal debtor to discharge a negotiable promissory note, and the payment thereof by the surety does not discharge the obligation."

Defendant's allegation shows Peterson was a joint maker of the note which he subsequently paid. It must follow from the authorities from which we have quoted, that its payment by him discharged the obligation, and he could no longer sue his coprincipal on the note; but his right of action was one on the implied promise of plaintiff to reimburse him; this action was barred in two years. Defendants acquired no better right in the purchase of the note from Peterson than Peterson had. There was no error committed by the trial court when he so held.

■ The second assignment of error complains of the personal judgment rendered against defendant, Mrs. Marion Gaines. It is contended that because she was a married woman, and the debt sued upon was not shown to be one of those for which she could bind her separate estate, no personal judgment could be rendered against her. We have examined the plaintiff's pleadings carefully and find nothing to disclose her coverture. The fact that

plaintiff's petition designated her as "Mrs. Marion Gaines" cannot be construed to mean that she is a married woman; it can mean no more than that she has, at some time, been such. Nor does she anywhere plead her coverture as a defense, or otherwise seek to avoid the effect of her signature to the note sued on.

■ There is, in the beginning of defendants' cross action, this statement: "Come now the defendants, Milton J. Gaines and wife, Marion Gaines, and plead," followed by the petition in cross action. Such disclosure is no more than that she joins her husband in the cross action against plaintiff, in which they allege Marion Gaines loaned plaintiff $5,000 which they as defendants (cross plaintiffs) seek to recover. The pleading in which it is disclosed that she is a married woman is no part of the answer to plaintiff's cause of action. The defensive plea appears in the transcript to be complete and is signed by counsel, while in the cross action pleading, the cause is numbered and styled as in an ordinary petition. However, because no separate file marks are shown in the transcript it is perhaps true that the defensive plea and the cross action petition were attached together and filed as one instrument. We do not consider this makes any difference, however. It is certain Mrs. Gaines has not sought to avoid liability on the note sued upon because she is a married woman. The contract evidenced by the note sued upon by plaintiff was not void as to her, because she was a married woman. At most it was no 'more than voidable; if the note was given for the consideration of the purchase of the stock in Gaines Motor Co., as plead by the defendants, Mrs. Gaines had the option when sued either to ratify or repudiate her contract. Nowhere during the entire proceeding did she seek to avoid liability on account of coverture.

As shown by the judgment of the court, referred to in another part of this opinion, Mrs. Gaines expressly confirmed her contract in signing the note, by confessing liability thereon, so as to procure the right to open and conclude the argument; this was permissible, of course, since after such a confession nothing was left for determination except the cross action.

■ Harris v. Ware, Tex.Civ.App., 93 S.W.2d 598, writ refused, was a case in which a plaintiff sued husband and wife, among other things for a money judgment, growing out of a rental contract, which plaintiff sought to cancel. Defendants claimed the contract was valid and resisted its cancellation. Court said (page 599): "It is now definitely settled in this state that the contract of a married woman is not void, but is merely voidable. Leake v. Saunders [126 Tex. 69], 84 S.W.2d 993. Consequently, Mrs. Harris had a right to stand on the contract or to repudiate it as she saw fit, but she could not, do both. Having resisted cancellation of the lease and sought to hold possession of the leased premises by virtue thereof, she thereby affirmed the contract and is bound thereby." The admission by Mrs. Gaines of the justness of plaintiff's cause of action was inconsistent with her present complaint that no just judgment could be rendered against her, and we think brings her case clearly within the authority from which we have just quoted.

■ In Watters v. Lanning, Tex.Civ. App., 99 S.W.2d 639, writ dismissed, it was held that when a married woman is sued, to avoid liability, she must plead her coverture as a defense thereto, and upon such failure she is bound by the judgment whether it is for such a debt as she could have bound herself or not.

We do not consider the cases cited by us are necessarily in conflict with Williams v. Jameson, Tex.Civ.App., 44 S.W.2d 498, in which a writ of error was dismissed by the Supreme Court, in an opinion reported in 67 S.W.2d 228, cited and relied upon by defendants here. If it could be said they do conflict, we think the later cases are supported by the sounder reasoning, and one of them is by the Supreme Court and that court refused writ in another and dismissed the application in the last one. We think no reversible error is shown in the matter pointed out.

■ The remaining assignment complains of the submission to the jury of special issue No. 16, which reads: "Do you find from a preponderance of the evidence that Milton J. Gaines (one of the defendants) by his acts, representations, conduct and silence, lead the plaintiff, Sidney A. Gaines, to believe that Milton J. Gaines would not insist upon Sidney A. Gaines refraining from conducting the kind and character of business he was conducting during the period in controversy?" The issue was answered "Yes."

Defendants contend that because other issues, of which no specific complaint is

made, were improper, that the one complained of tended to confuse the jury and bring about a prejudicial effect on the results obtained. We see no merit in the contention. 'In their cross action, defendants sought to recover damages against plaintiff for a breach of the contract, whereby it is alleged that plaintiff engaged in a business in violation of his contract with them. Plaintiff plead estoppel and waiver as against defendants and the testimony is sufficient to support the jury's answer to the issue. The first issue submitted elicited an answer that Sidney A. Gaines had not engaged in a business similar to that of defendants'. In answer to other issues it was found that defendants did not sustain a loss by reason of the business in which plaintiff was engaged; that plaintiff substantially complied with the terms of his contract with defendants; and by issue No. 15, immediately preceding the one complained of, the jury found that defendant waived the provisions of the contract which precluded plaintiff from engaging in the business in which he subsequently engaged.

We can see no harmful effects resulting to defendants on account of the submission of the issue complained of, especially in view of other findings enumerated.

From the conclusions reached by us, for reasons stated and under the authorities cited, we must of necessity overrule the assignments of error presented, and affirm the judgment of the trial court, which is accordingly done.