David John MILLER, Appellant,

v.

Ellison MILES, Appellee.

No. 183.

Court of Civil Appeals of Texas.

Tyler.

Feb. 10, 1966.

Rehearing Denied March 10, 1966.

Robert C. McGuire, Turner, Atwood, Meer & Francis, Dallas, for appellant.

Daniel R. Rogers, Thompson, Knight, Wright & Bullion, Dallas, for appellee.

MOORE, Justice.

This is a suit for contribution. The facts show that in December, 1958, appellant Miller and appellee Miles, desiring to go into the printing business, formed a corporation known as the Miller Publishing Company, Inc. Miles purchased 52% of the capital stock; Miller 40% and Kenneth Carter purchased the remaining 8%. The company commenced business and shortly thereafter was in need of additional financing. On July 9, 1959, each of the above named stockholders signed a guaranty agreement with the First National Bank of Dallas guaranteeing loans and advances to the company in the

amount of $200,000.00. The following day, the company executed a note to the bank in the amount of $125,000.00 which was deposited to the account of the company. On June 2, 1960, the company again being in need of additional financing, which was calculated to be in excess of the original guaranty, Miles and Miller again executed to the bank another guaranty agreement guaranteeing "unlimited" credit to the company. Carter was not a party to this agreement. On the following day, the company executed its note and secured a loan from the bank in the amount of $100,000.00, which was deposited to the credit of the company. In August, 1960, the company again was in financial difficulty. The company was without funds in its checking account. The bank, however, continued to pay overdrafts on the company in the amount of $14,113.50, until August 25th, 1960. On that date both of the above described notes were past due and the bank, being apprehensive of an examination by bank examiners, called on Miles to make arrangement for payment of the notes and overdrafts. In response to the request, Miles went to the bank and arrangements were made whereby Miles was to execute his personal note to the bank in the amount of $230,654.16 covering both notes, with interest but not including the amount of the overdrafts. The bank was to assign the corporate notes to him and he in turn was to re-assign the notes and guaranties back to the bank as collateral upon his personal note. This was done on August 25, 1960. At this time Miles advised the bank that he no longer desired to be bound on his "unlimited" guaranty and the bank suggested that he sign an additional guaranty in the amount of $17,671.99 to cover the overdrafts, which he did. Thereafter, on September 12, 1960, Miller Publishing Company went into bankruptcy. The First National Bank filed a claim in the bankruptcy basing its claim upon the notes of the company which had been re-assigned to the bank by Miles. As a result of the claim, the bank received the sum of $24,206.42 which was applied as a credit upon the Miles note. In order to raise the money to finally discharge the note, Miles sold some of his oil producing property to Miles Production Company for the sum of $250,000.00 and on April 26, 1961, paid the bank the balance due on his note in the amount of $220,767.-66 including interest.

Appellee Miles filed this suit for contribution against appellant Miller on October 4, 1962, alleging that he had been compelled to pay out the sum of $222,560.41 as a result of the guaranty and that since Miller owned 40% of the stock in the corporation, he should, as a matter of law, be required to contribute 40% of the loss for a total sum of $89,016.16.

Appellant Miller answered with a general denial and specially pled the two-year statute of limitations and the statute of frauds. He further alleged that prior to the execution of the guaranty agreements, Miles agreed that he, Miles, would assume all liability for any loss under the guaranty.

Trial was before a jury and at the conclusion of the evidence, both parties moved for an instructed verdict which was overruled. In response to Special Issues, the jury found: (1) that on October 1st, 1960, Miller Publishing Company owed the First National Bank the sum of $14,113.50; (2) that Miles made payments to the bank on the company indebtedness; (3) that Miles paid to the bank $220,767.66 on the indebtedness; (4) that he paid such indebtedness on April 26, 1961; (5) that Miles and Miller did not agree that it was Miles' responsibility to obtain financing for the company and would be solely obligated therefor; (6) that Miller agreed with Miles that he would pay Miles 40% of the amount, if any, which Miles paid the bank in satisfaction of the corporation debts; (7) that after Miles had made payments of the corporation debt to the bank, Miller renewed his promise to pay 40% of said amount; (8) that the demand made by the bank for the payment of the overdrafts upon the company was

based solely on the guaranty agreement of August 25, 1960, executed by Miles.

Prior to entry of judgment, the appellant filed a motion for judgment, alternative motion to disregard findings on Special Issues, and alternative motion for judgment non obstante veredicto which were overruled. Plaintiff filed a motion for judgment on alternative grounds which was likewise overruled. After disregarding Special Issue No. 1 and the jury's answer thereto, the trial court entered judgment in favor of the appellee Miles in the amount of $88,307.06 plus interest thereon at the rate of six (6%) per cent per annum from April 26, 1961, until the date of judgment and interest upon the judgment at the same rate until paid. Appellant duly filed his motion for new trial which was overruled and then perfected this appeal.

As we view the record, this was a simple suit for contribution with most of the material facts being without dispute. While the jury's findings on Special Issues 1, 6, 7 and 8 form the battleground for more than 200 pages of briefs, we have concluded that the jury's findings on these issues are immaterial and may be disregarded. After disregarding these issues, we reform and affirm the judgment.

Appellant has assigned 64 Points of Error contending, among other things, that the judgment is erroneous in that it requires a contribution in the amount of 40% of the indebtedness whereas the judgment should have required each of the co-obligors to bear the loss equally. We sustain this contention.

By the terms of the guaranty agreements, each of the guarantors jointly and severally agreed to guarantee the indebtedness of the Miller Publishing Company, the principal obligor. There is nothing in the language of the instruments limiting the liability of the guarantors as between themselves.

The rule governing liability of co-guarantors as between themselves is stated in 27 Tex.Jur.2d, par. 59, p. 326, as follows:

"As a general rule co-guarantors, as between themselves, are required to bear equally the loss occasioned them by default of the principal obligor. Accordingly, one or more of them who has or have satisfied the obligee's claim against the principal obligor in full may maintain a suit for contribution against the other or others."

The nature of the right of contribution is stated in 13 Tex.Jur.2d, par. 2, p. 687:

"The doctrine of contribution is founded in equity and natural justice; it has its origin in the equitable consideration that parties who have assumed a common burden should bear it equally. * * *"

In suits for contribution the right of action is upon the implied promise for reimbursement and not on the debt. Jackson v. Murray, 77 Tex. 644, 14 S.W. 235; 13 Tex.Jur.2d, par. 16, p. 705.

Under numerous Points of Error which appellant refers to as Groups IV and V, he complains of the action of the trial court in submitting Special Issues 6 and 7, as well as refusing to disregard and in rendering judgment based on the issues requiring contribution in the amount of 40% rather than requiring the respective parties to share the loss equally.

The judgment of the trial court does not contain any findings of fact or express the theory upon which it was rendered; however, it is apparent that judgment requires contribution based upon ownership of stock in the company rather than an equal distribution of the loss between the co-guarantors.

Appellee undertakes to sustain the judgment upon the theory that owners of corporate stock who act as guarantors for

the company must as between themselves share the indebtedness in proportion to the stock owned by each guarantor and in support of his contention cites the case of Graves v. Smith, 4 Tex.Civ.App. 537, 23 S.W. 603 and Maresh v. Jennings, (Tex. Civ.App.) 38 S.W.2d 406. We are not in accord with this contention and do not believe that the cited cases so hold. As we interpret the holding in those cases, they hold that if a guarantor receives some direct benefit as a result of the guaranty, he would become liable in proportion to the benefit received. There is nothing in the evidence here suggesting that Miller received any direct benefit as a result of the loans. The mere fact that the evidence discloses that Miller owned 40% of the stock, standing alone, would not alter the common law rule of pro rata contribution, and would not therefore form a basis for a judgment requiring a contribution of 40%.

This leads us to a consideration of the question of whether the judgment for 40% contribution can be sustained upon the basis of the jury's finding in Special Issues Nos. 6 and 7, finding that Miller agreed to contribute 40%. Appellant objected to both of the issues on numerous grounds, one of which there were no pleadings to sustain same. He also requested the court to disregard the findings. The action of the trial court in submitting the issues and in refusing to disregard has been brought forward by assignments of error.

■ Appellee's pleadings reveal that the cause of action is for equitable contribution and nothing more. We fail to find anything in the petition that would in any way suggest that the suit was brought to enforce a contract or agreement to pay 40% of the guaranty indebtedness and appellee does not so contend in his brief. The basis of his contention seems to be that as a matter of law equity will require a contribution of 40% of the corporate indebtedness because the appellant owned 40% of the stock.

■ Since appellee did not allege that appellant contracted to pay 40% of the indebtedness and since appellee does not contend that his cause of action is based upon a contract, we have concluded that Issues 6 and 7 are immaterial and foreign to any issue framed by the pleadings and should therefore be disregarded. On page 69 of his brief, appellee admits that the answers to these issues were immaterial because as he says, his right to a recovery "arose under the law of contribution." When the issues are found to be immaterial, the jury's answers to such issues should be disregarded by the trial court in rendering judgment and they should likewise be disregarded by the appellate court where the trial court considers them. American Mut. Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W. 2d 844; Owens v. State, (Tex.Civ.App.) 342 S.W.2d 183.

We concur with the ruling of the trial court that the jury's answer to Special Issue No. 1 was immaterial and therefore should be disregarded.

The issue required the jury to find the amount of money that Miller Publishing Company owed the bank on October 1, 1960. Under the particular facts of this case, we think the question of the amount of money owing by the company involved a legal question, because in order for the jury to answer the question, they would ultimately be compelled to determine whether the Miles note of August 25, 1960, amounted to a discharge of the Miller Company note. Their finding demonstrates that the jury reached the legal conclusion that it did and therefore, according to their finding, the company owed only the sum of $14,113.50 which was the amount of the overdrafts.

■ The function of the jury is to find facts and in this instance the question of fact presented by the evidence was whether or not the parties intended for the new note to take the place of and extinguish the company notes. Based upon a finding to

those issues, it would then become the duty of the court to determine, as a matter of law, the amount due and owing by the company on October 1, 1960. Such amount was thus a legal matter for the determination of the court. The jury's findings thereon amounted to nothing more than a legal conclusion and as such became immaterial and therefore was properly disregarded by the trial court in writing his judgment. Jones v. Winter, (Tex.Civ.App.) 215 S.W.2d 654; Ramm v. Ramm, (Tex.Civ.App.) 294 S.W. 2d 174.

We further find Special Issue No. 8 to be immaterial. Appellant takes the position that even though he was a co-obligor on the indebtedness represented by the notes, the effect of this finding relieved him of all liability on the overdrafts. The issue merely inquired as whether the bank's demand on Miles to pay the overdraft was based solely on the additional guaranty in the amount of $17,671.99, which he executed for the purpose of covering the overdrafts, penalty and interest. Even though it be assumed that the bank based its demand solely upon the additional guaranty agreement, we fail to see how this unilateral act on the part of the bank in making such a demand could relieve Miller of liability upon his "unlimited" guaranty. These funds were advanced while the "unlimited" guaranty was still in full force and effect, and prior to the time Miles executed the third guaranty agreement on August 25, 1960. Since the undisputed facts show that the bank had already disbursed the funds covering the overdrafts under the unlimited guaranty agreement, the rights of the parties thus became fixed prior to August 25th and appellant was therefore bound as a co-obligor on the overdrafts.

Having disregarded Special Issues Nos. 1, 6, 7 and 8, we turn now to the question of whether or not the judgment can be sustained on the basis of the remaining issues. The remaining issues as numbered in the charge established the following facts: (2) that Miles made payments on the indebtedness to the bank; (3) that he paid the sum of $220,767.66; (4) that he paid the same on April 26, 1961, and (5) that there was no agreement that Miles was to obtain the financing and be solely obligated therefor.

We have concluded that these findings, together with the other undisputed facts, establish a cause of action for equitable contribution and that the judgment may be sustained by reforming same so as to require appellant to contribute equally with the other guarantors his pro rata share of the indebtedness.

Appellant contends, however, that the cause of action was barred by the two-year statute of limitations as provided for in Article 5526, Vernon's Ann.Tex.Civ.St. Appellant reasons that when Miles executed his personal note and delivered it to the bank on August 25, 1960, the note constituted payment of the previous indebtedness and therefore the cause of action for contribution accrued on that date, and since the suit was not filed until October 4, 1962, it was barred by limitations.

The parties agree that the statute of limitations that governs an action for contribution begins to run from the date of the payment of the obligation. It is also agreed that a cause of action for contribution brought on the theory of implied contract is governed by the two-year statute of limitations. Gaines v. Gaines, (Tex.Civ.App.) 119 S.W.2d 427; 13 T.J.S.2d, par. 18, page 707.

The question of whether or not Miles' personal note constituted payment of the previous debt therefore becomes important in determining the question of limitations.

Upon the question of whether a promissory note will constitute payment of a pre-existing debt, we quote from 44 Tex.Jur.2d, par. 27, pages 677–679:

"The giving of the debtor's promissory note is not a payment of his obligation, and will not extinguish the debt

unless the parties so intend. * * * and the acceptance by a creditor of a new note from one or more of several joint obligors bound on a note or for a pre-existing debt is not a payment thereof, and does not release the other joint obligors.

"The intention of the parties is all-important. * * * Whether there was a payment depends on the intention of the parties and the facts of the particular case. Intention may be shown by circumstances, and is generally a question of fact for the jury."

Whether the transaction on August 25, 1960, between Miles and the bank was such as to amount to payment and discharge of the company debts depends on the intention of the parties. If it was the intention of the bank and Miles to discharge the previous obligation represented by the guaranty, appellant's cause of action accrued on the date he executed his personal note and limitation would commence to run; otherwise, it would not. Boulware v. Robinson, 8 Tex. 327, 328; Barton v. Farmers' State Bank, (Tex.Civ. App.) 276 S.W. 177. The evidence is not such that we can say that the corporate debts were paid and discharged as a matter of law. The undisputed facts show that in a simultaneous transaction Miles executed his note and the bank assigned him the corporation note and then took a reassignment of the corporation note as collateral which the bank thereafter used as the basis of its claim in the bankruptcy proceedings. This would strongly indicate that the bank never had any intention of releasing the previous indebtedness. At most, the evidence raises only a fact issue as to the intention of the parties. Appellant had the burden of obtaining jury findings establishing facts which would make out his defense of limitations. No objections were made to the charge because of the omission of issues in this connection, nor were any issues requested in this regard. Appellant therefore waived these issues and under the provisions of Rule 279, Texas Rules of Civil Procedure, such issues must be deemed to have been found in support of the judgment. Jones v. Downey, (Tex.Civ.App.) 359 S.W.2d 116.

In addition to this, we think the point is not well taken for another reason. As we construe appellant's testimony, he testified that he moved from Dallas about September 1, 1961, and resided in Topeka, Kansas, for fourteen months. While appellee failed to plead absence from the state as an exception to the plea of limitations, appellant made no objection to the admissibility of this testimony on that ground. His testimony was therefore properly before the court and amounts to a judicial admission, admitting absence from the state for a sufficient length of time to destroy his plea of limitations. Rule 67, T.R.C.P.; Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415; McCormick and Ray, Texas Law of Evidence, Vol. 2, Sec. 1127.

Appellant further contends that the suit is barred by Article 3995, Sec. 2, of the statute of frauds, which provides that no action shall be brought to charge any person upon a promise to answer for the debt, default or miscarriage of another, unless the same shall be in writing. The occasion for this contention is brought about by the fact that the court rendered judgment for the appellee based on the jury's findings in Special Issues Nos. 6 and 7 wherein the jury found that appellant promised to pay 40% of the indebtedness both before and after same was paid. As pointed out before, appellee does not base his suit upon a contract, but bases it upon a promise implied by law. The statute of frauds would therefore not be a bar to the equitable remedy of contribution based upon an implied promise. Furthermore, if we are correct in holding that the jury's answers to Special Issues Nos. 6 and 7 are immaterial, there would be no basis for the application of the statute.

■ Appellant further asserts that Miles should not be permitted to recover contribution because he contends the evidence shows that Miles not only judicially admitted that he did not pay the indebtedness, but also offered evidence showing that the debt was paid by Miles Production Company. Appellant argues that since the company paid the indebtedness, Miles should not be permitted to recover the amount paid by the company. In our view, the evidence is not subject to such a strained construction. Although there are some hearsay statements in the bank's records which might indicate that Miles Production Company paid the indebtedness, both Miles and the vice-president of the bank outlined the procedure by which Miles sold his oil property to the company; the bank loaned the company the funds to buy the property and upon payment, Miles took these funds and paid the bank. There is no evidence of probative force to the contrary, hence the point is overruled.

■ In the 25th through 30th Points, appellant contends that the court erred in disregarding Special Issue No. 1 and that Special Issues Nos. 2, 3, 4 and 8 are in conflict with Special Issue No. 1. As pointed out before, we think Special Issue No. 1 was immaterial and was properly disregarded by the trial court. The question of a conflict therefore becomes moot.

In Points 31 through 53, the appellant complains of the action of the trial court in overruling the objections to the charge and in failing to submit his requested issues. It would serve no useful purpose to discuss each of these assignments in detail. We have fully considered each of the assignments as well as all remaining assignments and have concluded that neither of them reflect error.

We now turn to the problem of reformation of the judgment. As pointed out before, we have concluded that the judgment is erroneous in that it allows a recovery for 40% of the indebtedness whereas it should have allowed a recovery for contribution on an equal basis in proportion to the amount guaranteed by each guarantor. Since the facts were fully developed, we believe a reformation may be accomplished by simple mathematical calculations based upon the following conclusions.

Miller, Miles and Carter were parties to the first guaranty agreement in the amount of $200,000.00, therefore, they each became obligated for their pro rata share to that extent. Each of them would therefore be obligated to share one-third of the $200,000.00 debt or the sum of $66,666.67 each. Carter settled with Miles prior to suit. Carter was not a party to the unlimited guaranty and therefore Miles and Miller being the only obligors thereon would be jointly liable for the debt in excess of the sum of $200,000.00. The jury found that Miles paid the bank all of the indebtedness in the amount of $220,767.66. The amount in excess of $200,000.00 was therefore $20,767.66. Miles and Miller being co-obligors on the unlimited guaranty agreement thus became obligated for the additional sum of $10,383.00 each. It follows that appellant's share of the debt was $77,-050.50 and therefore he should be required to make contribution in that amount. 13 Tex.Jur.2d, par. 4, p. 690; Moore v. Hanscom, (Tex.Civ.App.) 103 S.W. 665.

The judgment of the trial court will therefore be reformed so as to allow Ellison Miles to recover of and from John David Miller the sum of $77,050.50 rather than the sum of $88,307.06 as recited in the judgment.

Reformed and affirmed.