# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### DECEMBER 1994 SESSION

**FILED**

**June 26, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | | No. 03C01-9402-CR-00069 |
| Appellee | | |
| | | JEFFERSON COUNTY |
| vs. | | |
| | | Hon. Rex Henry Ogle, Judge |
| | | |
| **J.Y. SEPULVEDA,** | | (First Degree Murder, Esp. |
| Appellant | | Agg. Burglary & Theft) |

FOR THE APPELLANT:

David B. Hill
Attorney at Law
301 E. Broadway
Newport, TN 37821

R.J. Tucker
Attorney at Law
317 East Main St.
Newport, TN 37821

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter

Sharon S. Selby
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

Alfred C. Schmutzer, Jr.
District Attorney General

James Gass
Asst Dist. Attorney General
Sevier County Courthouse
Sevierville, TN 37801

OPINION FILED: _____

**AFFIRMED IN PART; MODIFIED IN PART**

Robert E. Burch
Special Judge

**OPINION**

Following a jury trial, Appellant was found guilty of Felony Murder, Especially Aggravated Burglary and Theft of less than five hundred ($500)Dollars.  The jury sentenced Appellant to life for the murder and the trial court sentenced him to ten years for the burglary and eleven months twenty-nine days for the theft.  The trial court ruled that the burglary sentence be served consecutively to the murder sentence, while the theft sentence be served concurrently therewith.  He appeals of right to this Court assigning four issues for review:

1). Whether the trial court erred in failing to suppress the statement made by Appellant on the day of his arrest because said statement was obtained in violation of the appellant's Fifth and Sixth Amendment rights under the Constitution of the United States.

2). Whether Appellant's subsequent statements should have been suppressed because he did not receive effective assistance of counsel in connection therewith.

3). Whether the evidence in the record in this case was sufficient to convict the appellant of murder in that it was not established beyond a reasonable doubt that the death of the deceased was a consequence of the beating inflicted upon her by Appellant.

4). Whether the trial court erred in sentencing the appellant to consecutive sentences in light of the facts of this case.

We find that none of these issues constitute error and affirm the felony murder and theft convictions.  The conviction for especially aggravated burglary must be modified to aggravated burglary and the sentence is modified for that offense.

**FACTS**

On August 6, 1991, friends of ninety-five year old Mrs. Cora Nicholson noticed a broken window at her residence and stopped to investigate. They noticed Appellant, his wife and his mother standing in the driveway of the house next door where Appellant and his wife lived. When Mrs. Nicholson did not answer their knock on the door, the police were called. When the police arrived, Mrs. Nicholson was found lying injured on the floor of her home, apparently the victim of a beating. At the time she was found, the victim was conscious and asked to speak to her friends who were standing on the porch. The victim was transported to a local hospital.

As the police investigated, they noticed blood on the broken window and inside the house. They also noticed that Appellant had an apparently fresh cut on his hand. Upon inquiry, Appellant stated that he had cut his hand trying unsuccessfully to get into the house to aid the victim. Appellant was advised of his rights at the scene and was requested to come to the police station for questioning. He was given the option of having his wife drive him to the police station or accompanying the officers. Appellant chose to accompany the officers in the patrol car. As they prepared to leave, Officer McCarter and Chief Deputy Shaw overheard Appellant tell a family member to call Richard Talley, a Dandridge attorney.

After arriving at the police station, Appellant waited in the lobby of the jail for his attorney. He was later joined there by his wife. Appellant waited for over an hour and a half in the lobby, but his attorney never appeared. It does not appear in the record that Mr. Talley was ever contacted. Although Appellant testified that Officer McCarter came out several times and angrily inquired whether Appellant would talk to him, all of the other witnesses who testified stated that no one approached Appellant nor did anyone ask him anything during his wait in the lobby. After nearly two hours, Appellant

3

approached Officer Denton's duty station and asked to speak with Officer McCarter. After signing a waiver of having his attorney present, Appellant was advised of his rights, signed a waiver of these rights and gave a statement to Officer McCarter. In this statement, Appellant admitted breaking into the house with one David Johnson, Appellant's brother-in-law, but insisted that Johnson had inflicted the wounds to the victim and that Appellant had only acted to prevent further injury to her. Appellant was then arrested for the burglary.

Appellant remained in jail and, in subsequent weeks, gave two additional statements to the police which were essentially the same as the first statement.

Subsequent to these statements, the police arrested David Johnson. Due to conflict in the statements of the two suspects, the police requested each to take a polygraph test. Appellant agreed. While the T.B.I. agent was preparing to give the polygraph test to Appellant, he explained the operation of the machine to Appellant and asked Appellant several preparatory questions. While answering these questions, Appellant suddenly confessed that it was he who had beaten the victim.

In the ensuing weeks after her injury, the victim's condition continued to deteriorate. She was subsequently transferred from the hospital to a nursing home. After nearly twelve weeks and the day before Appellant's third statement, Mrs. Nicholson died due to medical conditions brought on by her injuries.

## STATEMENTS OF THE APPELLANT

### (FIRST AND SECOND ISSUES)

Appellant gave a total of four statements to the police prior to the trial of this case. The first statement was given on the date of the arrest of Appellant (issue #1) and the other three were given on subsequent days after counsel had been

4

appointed for Appellant (issue #2). He insists that the trial court was in error in refusing to suppress all of these statements. Since the standard of review is essentially the same in both of these issues, we shall initially treat them together then analyze them separately.

## Standard of review

A determination by the trial court that a confession has been given voluntarily and without coercion is binding upon the appellate court in the absence of a showing that the evidence preponderates against the ruling. *Lowe v. State* 584 S.W.2d 239 (Tenn. Crim. App. 1979). On appeal, the appellant has the burden of showing that the evidence preponderates against the findings of the trial court. *Braziel v. State* 529 S.W.2d 501(Tenn. Crim. App. 1975). A trial court's determination at a suppression hearing is presumptively correct on appeal. This presumption of correctness may only be overcome on appeal if the evidence in the record preponderates against the trial court's findings. *State v. Kelly* 603 S.W.2d 726, 729 (Tenn. 1980). The appellate courts of this state are bound to accept that determination by the trial court that a confession was freely and voluntarily given unless the evidence in the record preponderates against that finding. *State v. Adams* 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992). Findings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and an appellate court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against the findings of the trial court. *State v. Odom* 928 S.W.2d 18 (Tenn. 1996).

The determination of whether a confession has been obtained improperly, by coercive or improper inducement, can only be made by examining all the surrounding circumstances involving the interrogation leading to the confession. *Monts v State* 400 S.W.2d

5

722(Tenn. 1966).  The question in each case is whether the conduct of the law enforcement officers was such to undermine the accused's free will and critically impair his capacity for self-determination so as to bring about an involuntary confession. *Columbe v. Connecticut* 367 U.S. 568, 602, 81 S. Ct. 1860, 1879, 6 L Ed. 2d 1037, 1057-58 (1961); *State v. Kelly* 603 S.W.2d 726, 728(Tenn. 1980).

With respect to the statement made on the day of his arrest, Appellant, in addition to his allegations of involuntariness and non-waiver of his *Miranda* rights, submits that his request for counsel was not honored and that he was subsequently coerced into giving an uncounselled statement.

Appellant insists that, as to the remaining three statements, his appointed counsel was ineffective in allowing the police to speak with him in the absence of counsel.

Findings of fact made by a trial court on issues surrounding the giving of a custodial statement are binding upon appellate review if there is any evidence to support them. *State v. O'Guinn* 709 S.W.2d 561, 566 (Tenn. 1986); *State v. Chandler* 547 S.W.2d 918, 923 (Tenn. 1977).  This includes the waiver of the right to counsel. *State v. Van Tran* 864 S.W.2d 465, 473 (Tenn. 1993).

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694(1966), renders inadmissible as evidence-in-chief incriminating statements obtained as the result of custodial interrogation prior to the accused being advised that he has the right to remain silent and the right to counsel. The Court in *Miranda* found custodial interrogation to be inherently coercive and declared the right to counsel to be a necessary procedural safeguard to protect the privilege against self-incrimination. An accused's asserted "right to cut off questioning" must be scrupulously honored," but may be waived. *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326 (1975). When an accused invokes

his right to counsel, all "interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. Repeating the Miranda warning and obtaining a waiver is not compliance. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880 (1981). However, the right to counsel must be claimed. See *State v. Claybrook*, 736 S.W.2d 95 (Tenn. 1987). A confession made after a request for counsel is admissible only if the accused initiates further discussion with the police and knowingly and voluntarily waives his Miranda rights. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830 (1983); *State v. Claybrook*, supra. Whether the appellant did or did not make an equivocal or unequivocal request for an attorney is a question of fact. *State v. Farmer* 927 S.W.2d 582 (Tenn. Crim. App. 1996).

### Analysis - Statement on day of Crime (Issue #1)

Appellant's account of the facts surrounding the first statement (August 8, 1991) differs dramatically from those testified to by the police officers. The trial court accredited the version given by the police officers. We agree.

Appellant testified at the hearing of the motion to suppress that he told Officer McCarter of his desire to speak to a lawyer; that while Appellant sat in the lobby of the jail waiting for his lawyer, Officer McCarter came out into the lobby three times asking if Appellant would talk to him and seemed angry when Appellant stated that he desired to wait for his lawyer; that the female officers came out "once or twice" and asked if Appellant would talk to Officer McCarter; that Appellant was never advised of his rights prior to giving the statement; that he signed the waivers at the same time that he signed the statement itself; that Officers McCarter and Shaw threatened him and promised that Appellant would not be prosecuted for breaking into his uncle's garage if he would "cooperate", causing him to give the statement.

7

On the other hand, the officers testified that Appellant never told them that he desired to talk to a lawyer but that Officers Shaw and McCarter overheard Appellant tell a family member to call Richard Talley, a Dandridge attorney. Because they had heard that communication, the officers told Appellant to sit in the lobby of the jail to await his lawyer. No officer spoke to Appellant during his one to two hour wait. Finally, Appellant himself contacted Officer Denton and requested to talk to Officer McCarter, stating, "... I'm ready to talk without a lawyer. I'm tired of waiting." Even then Officer McCarter refused to talk to Appellant until he had executed a written waiver of counsel. Appellant dictated a simple waiver to Officer Denton and signed the same in her presence. Once again, Appellant was advised of his rights. He then signed a waiver and gave police the statement complained of. At no time was Appellant threatened nor was he made any promises.

The import of Appellant's original statement was that David Johnson (Appellant's brother-in-law) was the one who actually beat the victim and that Appellant was present and pulled Johnson away from the victim.

The exhibits establish that Appellant signed his statement that he would talk to Officer McCarter without Richard Talley being present at 12:45 p.m. and that he signed a waiver of his rights at the same time before Officers Denton and Feisko. An additional waiver was signed by Appellant at 1:12 p.m. Appellant's statement was signed by him at 1:57 p.m.

Appellant's recitation of the facts surrounding his first statement paint a picture of unprofessionalism, ineptness, malevolence and outright stupidity on the part of the police. If Appellant was telling the truth, the police violated his constitutional rights in every conceivable manner.

The trial judge accredited the facts given by the police officers. Appellant often contradicted himself within a few

8

sentences and told a story which was simply too farfetched to believe. The various officers' testimony supported each other and was supported by the exhibits, which Appellant himself signed. Thus, the facts testified to by the officers are the facts by which the statement is tested.

The State insists, perhaps correctly, that none of the rights which Appellant complains were violated had attached because the interrogation was not a custodial one. We will assume *ab arguendo*, however, that the interrogation was custodial in order to reach Appellant's complaints.

Appellate complains that he was questioned in spite of the fact that he had requested counsel. When a suspect invokes the right to counsel, further questioning by the police in the absence of an attorney is constitutionally prohibited. *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S. Ct. 1880, 1885 (1981). In this case, under the facts found by the trial judge, although the Appellant did not tell a police officer that he wanted to have counsel present, the police overheard him request that a family member call an attorney. As a result, the police declined to question the Appellant until counsel was present, a restraint that was appropriate under the circumstances. *See United States v. Porter*, 764 F.2d 1, 6-7, *cert. denied* 481 U.S. 1048 (1987) (Attempt to contact counsel by telephone in the presence of the police constituted an exercise of right to counsel, even though there was no express statement to the police that the defendant wanted an attorney present.)

However, subsequent facts establish that the Appellant waived his right to have counsel present when he reinitiated contact with Officer McCarter. An accused having expressed his desire to deal with police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the

9

police. *Edwards*, 451 U.S. at 484-85, 101 S. Ct. at 1885; *see State v. Goforth*, 678 S.W.2d 477 (Tenn. Crim. App. 1984). Appellant did just that. He went to the window of the counter where Officer Denton was working and "pecked" on the glass to attract her attention. Officer Denton then relayed Appellant's request to talk to Officer McCarter who refused to speak with him until Appellant had signed a written waiver of the presence of counsel. Appellant dictated a simple statement of his desire to talk to Officer McCarter without the presence of his lawyer to Officer Denton and signed the same before her. It is readily apparent that Appellant initiated the contact with the police and that the police scrupulously honored his indirect request for counsel to be present until Appellant himself initiated further contact. As the trial judge found, Officer McCarter did everything except run away from the appellant.

Appellant was twice advised of his rights and twice waived them in writing before being questioned by Officer McCarter. The questioning was proper and nothing was done to render the statement involuntary. On the contrary, in this matter and throughout the entire investigation, these officers acted with a high degree of integrity and professionalism.

Appellant's allegations that he had been drinking and taking pills that night are not supported by the testimony at the motion to suppress. From our examination of the record, we find no indication that Appellant was impaired in any manner.

In addition to the above Fifth Amendment rights, Appellant insists that he was deprived of his Sixth Amendment right to counsel. Appellant was not arrested until after he had given the statement to the police. Prior to that time, he sat unguarded in the lobby of the jail for nearly two hours. The Sixth Amendment right to counsel attaches only when adversarial judicial proceedings have been initiated by a formal charge. *United States v. Gouveia* 467 U.S. 180, 104 S.Ct. 2292 (1984). Appellant's

10

right to counsel under the Sixth Amendment had not yet attached.

Issue number one is found to be without merit.

## Analysis - Subsequent Statements (Issue #2)

In an innovative and novel use of the Sixth Amendment right to counsel, counsel for Appellant insists that his later statements should have been suppressed in that he was denied his right to the effective assistance of counsel before the trial because Appellant's counsel at that time allowed the police to interview Appellant without counsel attending. From the first two of these post-arrest interviews came statements of the Appellant which were not much, if any, more incriminating than Appellant's first statement. In the final interview, Appellant confessed for the first time that it was he who inflicted the fatal blows upon the deceased. Present counsel for Appellant insist that his counsel at the time should never have allowed such questioning.

First, we have examined the circumstances of the three statements and agree with the trial judge that Appellant's rights were properly protected by the police and that the statements were voluntary. It is apparent from the record that the police conducted these three subsequent interviews in the same manner in which they conducted the initial interview.

We are left with Appellant's claim of ineffective assistance of counsel prior to the trial. Questions of this nature almost always arise during the hearing of a post conviction relief petition. Although the claim may be novel at this stage of the proceedings, it may form the basis of relief in a proper case.

To prevail on an ineffective assistance of counsel claim, the defendant must ultimately show that the adversarial process failed to produce a reliable result. *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993) [citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)]; *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990) [also citing *Strickland v.*

11

*Washington*, supra].

Proving failure of the adversarial process because of ineffective assistance of counsel requires the defendant to satisfy, by a preponderance of the evidence, both prongs of a two-pronged test. See *Butler*, supra at 899. First, the defendant must prove that counsel's performance was deficient in that it failed to meet the threshold of competence demanded of attorneys in criminal cases. *Butler*, supra at 899. Second, the defendant must prove actual prejudice resulting from the deficient performance. *Cooper*, supra 747 (citing *Strickland*, supra at 687). Actual prejudice is established by demonstrating that, but for his counsel's deficient performance, the results of his trial would have been different and, thus, the adversarial process failed to produce a reliable result. *Best v. State*, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

While the trial court found all statements were knowingly and voluntarily made, it expressed concern with aspects of the performance of defense counsel:

> In all candor, the Court must say that he wished that [trial counsel] had inquired further of the facts and circumstances surrounding the investigation by the officers. He obviously has the right to rely upon what his client tells him. All of us who have represented people have that right, assuming it is reasonable.
>
> This court does believe that the defendant's statements to [trial counsel] were consistent with that he had told on the August 6th statement. I have no reason to find otherwise. I must say, however, and it pains this Court to have to say this, that an attorney should not send their client off unattended time after time, especially to a critical proceeding like a polygraph exam. I've represent[ed] cooperating defendants; all of us have. But I don't think that it rises to the level expected of us under the sixth amendment to send our clients off unattended for polygraph examinations. ... I don't think that's proper.

A number of problems, however, often arise when a claim

12

of the denial of effective counsel is considered in a direct appeal:

> Raising issues pertaining to the ineffective assistance of counsel for the first time in the appellate court is a practice fraught with peril. The appellant runs the risk of having the issue denied due to a procedural default, or, in the alternative, having a panel of this Court consider the issue on the merits. The better practice is to <u>not</u> raise the issue on direct appeal .... The issue can be subsequently raised in a post-conviction proceeding if the appellant's direct appeal, as here, is not successful.

*State v. Sluder*, No. 1236, slip op. at 16 (Tenn. Crim. App., at Knoxville, March 14, 1990).

This rationale applies to the circumstances in this case. A claim of ineffective assistance of counsel at this time is, in our view, premature. The record is simply not adequately developed for a final disposition. Thus, we decline to consider the second claim as it relates to the ineffective assistance of counsel.

## SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant challenges the sufficiency of the evidence in the record of his trial to sustain a conviction of murder in that the proof does not establish beyond a reasonable doubt that the death of the deceased was the consequence of the beating inflicted upon her by Appellant.

### Standard of Review

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage* 571 S.W.2d 832 (Tenn. 1978). A verdict of guilt, approved by the trial judge, accredits the testimony of the State's witnesses and

resolves all conflicts in testimony in favor of the State. *State v. Townsend* 525 S.W.2d 842 (Tenn. 1975). The presumption of innocence is thereby removed and a presumption on guilt exists on appeal. *Anglin v. State* 553 S.W.2d 616 (Tenn. Crim. App. 1977). The defendant has the burden of overcoming this presumption. *State v. Brown* 551 S.W.2d 329 (Tenn. 1977).

When the sufficiency of the evidence is challenged on appeal, the test is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Duncan* 698 S.W.2d 63 (Tenn. 1985); *Rule 13(e), T.R.A.P.*

**Analysis**

The victim in this case was a 95 year old lady who lived alone and was capable of caring for herself. The proof in the case did not establish that she had any serious medical condition prior to the beating of August 6, 1991. On said date, the facts found by the jury and accredited by the trial judge establish that Appellant entered the house of the victim, knocked her to the floor, choked her and kicked her in the head. She was found lying on the floor by friends. The victim was taken to a hospital, thence to a nursing home. Her medical course was one of steady decline until her death on October 27, 1991.

The expert forensic pathologist called by the state testified that he performed an autopsy on the body of the deceased. He determined that the cause of her death was extensive subdural hemorrhage which was consistent with multiple blunt trauma such as being hit in the head by fists or kicked in the head. The final cause of Decedent's death, he opined, was the accumulation of fluid in her lungs while she was in a weakened state due to the injuries mentioned above. There was no evidence that the deceased had suffered a stroke.

14

Appellant's own medical witness was the physician who cared for the deceased from her injury until her death. He testified that, to his knowledge, the deceased had received no trauma to her head except that inflicted by the appellant.

The fact that nearly twelve weeks elapsed between injury and death does not prevent Appellant's actions from being the cause of Decedent's death. The proof establishes a direct connection between Appellant's actions and the death of the deceased. The fact that the deceased may have actually expired due to secondary causes brought on by the injuries inflicted by Appellant does not allow him to escape responsibility for this homicide. *Evans v. State* 557 S.W.2d 927(Tenn. Crim. App. 1977). The issue is without merit as to the felony murder.

However, we note that a conviction for especially aggravated burglary was inappropriate in this case. The especially aggravated burglary statute provides as follows: "Acts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both." Tenn. Code Ann. § 39-14-404(d). Courts have interpreted this statute to mean that if the serious bodily injury element used to establish the especially aggravated burglary offense is the same injury that is an element of an accompanying offense, the defendant may not be convicted of both the especially aggravated burglary and the accompanying offense. *See State v. Oller*, 851 S.W.2d 841, 843 (Tenn. Crim. App. 1992); *State v. Holland*, 860 S.W. 2d 53, 60 (Tenn. Crim. App. 1993).

In a recent case similar to the present one, when the defendant was convicted of both especially aggravated burglary and first degree murder, this court stated that the especially aggravated burglary conviction must be reduced to an aggravated burglary conviction because the "act of killing the victim constituted the 'serious bodily injury' that was used to enhance the burglary offense to especially aggravated burglary." *State*

*v. Jehiel Fields*, No. 03C01-9607-CC-00261, Bradley County, slip op. at 12 (Tenn. Crim. App. Mar. 18, 1997).  Thus, in order to do substantial justice in this case, we believe that the conviction for especially aggravated burglary constitutes plain error and we modify the conviction to aggravated burglary.  *See Holland*, 860 S.W.2d at 60.  Furthermore, for the same reasons provided by the trial court in sentencing the defendant to ten years for the especially aggravated burglary, a Class B felony, we conclude that a sentence of five years shall be imposed for the offense of aggravated burglary, a Class C felony.

## CONSECUTIVE SENTENCING

Lastly, Appellant contends that the trial court erred in ordering his sentence for Especially Aggravated Burglary to run consecutively to his life sentence for Felony Murder. We will consider his claim as it relates to the five-year sentence we have imposed for aggravated burglary.

### Standard of Review

The standard of review in sentencing in criminal cases is a *de novo* review with a presumption that the sentence set by the trial court is correct if the record shows that the trial court followed the principles of the Sentencing Act of 1989, considered the relevant factors and made proper findings of fact in the record. *State v. Fletcher* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  If this is done, then we must affirm even if we would have preferred a different result. Id.  The burden of showing that the sentence is improper is upon the Appellant. Id.

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the

16

sentencing hearing;

(2) the presentence report;

(3) the principles of sentencing and arguments as to sentencing alternatives;

(4) the nature and characteristics of the criminal conduct involved;

(5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and

(6) any statement the defendant wishes to make in his own behalf about sentencing.

The record before us indicates that the trial judge considered all of the above factors which applied to this case. We, therefore, must presume that the ruling of the trial court was correct.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989 the limited classifications for the imposition of consecutive sentences were set out in *Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in *State v. Taylor*, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not be
> routinely imposed ... and ... the aggregate
> maximum of consecutive terms must be
> reasonably related to the severity of the
> offenses involved.

739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 act is, in essence, the codification of the holdings in *Gray* and *Taylor*; consecutive sentenced may be imposed in the discretion of the trial court only upon a determination that one or more of the

17

more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation;
>
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).


In *Gray*, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

---

[1]The first four criteria are found in *Gray*. A fifth category in *Gray*, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. *See* Tenn. Code Ann.§ 40-35-115, Sentencing Commission Comments.

More recently, in *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The *Wilkerson* decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in *State v. Woods*, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules."  *State v. Wilkerson*, 905 S.W.2d at 938.

## Analysis

The trial court found that Appellant was a dangerous offender in that his behavior indicated "little or no regard for human life," and that he did not hesitate "about committing a crime in which the risk to human life is high.  The circumstances surrounding the commission of the offense were found by the trial court to have been aggravated. The trial court was impressed, as are we, that Appellant broke into the house of a ninety-five year old lady knowing her to be home, stole her medicine from her and beat her and kicked her far beyond the extent necessary to accomplish the theft of the drug.  Appellant knew, or should have known, that a person of this advanced age would be extremely susceptible to injury and that even an injury which would not be serious to a younger person could prove fatal to a person of advanced age.

The trial court expressly found that confinement for an extended period of time is necessary to protect society from Appellant's unwillingness to lead a productive life and his resort to criminal activity in furtherance of his anti-societal

19

lifestyle.  Specifically, the trial court found that Appellant have two juvenile burglary convictions in 1982 (just before he turned eleven years old), a being under the influence of alcohol juvenile conviction in 1989 and two months later a conviction for driving under the influence of an intoxicant.  This offence was committed in August of 1991 when Appellant was nineteen years old.  The trial court recited it finding that, "...this defendant, even at this young age, has already indicated his unwillingness to lead a productive live, and has no hesitation about resorting to criminal activity".  In fact, the court found Appellant to be "totally out of control".

Finally the trial court found that the aggregate length of the sentences reasonably related to the offenses of which the appellant was convicted.  The actions of the appellant were brutal and vicious. We do not find that the appellant possesses the characteristics necessary to rehabilitate himself while serving his life sentence.  In fact, all of the facts which appear in the record indicate that Appellant's prospects for rehabilitation are slight. Due to this fact, the seriousness of the offenses involved, and the aggravated circumstances surrounding those offenses, we conclude that the aggregate sentence is consistent with the principles of sentencing.

The first degree murder judgment is affirmed.  The especially aggravated burglary conviction is modified to one for aggravated burglary, a Class C felony, and a sentence of five years in the Department of Correction is imposed, to be served consecutively to the life sentence imposed for the first degree murder.


_____
Robert E. Burch, Special Judge


20

**CONCUR:**

_____
Gary R. Wade, Judge


_____
Joseph M. Tipton, Judge